IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Steven Samuel,                                      ) | |
|                                   Plaintiff,        ) | Civil Action No.2:11-cv-3417-MGL-BHH |
|                                                     ) | |
|                          v.                         ) | **REPORT AND RECOMMENDATION** |
|                                                     ) | **OF MAGISTRATE JUDGE** |
|                                                     ) | |
| Warden G. Nolland/ AW Richard                       ) | |
| Cothran; Major Kevin Sharp;                         ) | |
| Lt. Centhia Ruth; Safety Lt. R. Jones;              ) | |
| L. Harris, *Grievance Coordinator*;                 ) | |
| Jessey Pace, *Med Supervisor*; and                  ) | |
| Dr. Draco,                                          ) | |
|                                                     ) | |
|                                   Defendants.       ) | |

The Plaintiff, a state prisoner proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon Defendants' Motion for Summary Judgment. (Dkt. No. 25.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about December 14, 2011. (See Dkt. No. 1.) On May 15, 2012, Defendants filed a Motion for Summary Judgment. (Dkt. No. 25.) By order filed May 16, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 26.) Plaintiff sought and received several extensions of time to respond. (See Dkt. No. 30; Dkt. No. 44; Dkt. No. 54; see also Dkt. No. 66.) Plaintiff filed a Response in Opposition on or about November 21, 2012. (See Dkt. No. 70.)

## PROCEDURAL FACTS

Plaintiff, who is currently housed at Turbeville Correctional Institution ("TCI" or "Turbeville"), alleges claims pursuant to 42 U.S.C. § 1983. Although Plaintiff's Complaint is difficult to understand, it appears Plaintiff brings the instant action as a result of injuries he alleges he sustained after falling in the shower. (See generally Dkt. No. 1.) Plaintiff contends that Defendants have violated his First, Fifth, Eighth, and Fourteenth Amendment rights. (See Dkt. No. 1 at 2 of 16.)

Plaintiff alleges that on February 6, 2010, he suffered injuries when he fell in the shower at Turbeville. (Dkt. No. 1 at 7 of 16.) Plaintiff states (verbatim),

> The accident occurred when IM notice water rising from the floor drain being clogged up and tried to exit the area, "while" holding the wall for support to gain better stability and balance. As I stepped forward I became off balance from slipping hazardly and had fallen on the bare floor towel.

(Id.) Plaintiff alleges that he suffered a "dangerous traumatic blow to the head" in his fall, in which he was "knocked out." (Id.) According to Plaintiff, "[t]his accident was not the first [of] its nature." (Id.) Plaintiff alleges that "several Turbeville staff members" were on "ample" notice of the "environmental safety hazard" in the segregation shower unit. (Dkt. No. 1 at 9 of 16.) It appears Plaintiff alleges that Defendants were deliberately indifferent to the "inadequate, unsafe prison safety condition" by not ensuring "safety shower mats" were purchased. (Id. at 10 of 16.) Plaintiff states that the shower conditions "pose an unreasonable risk of serious damage to prisoner future health." (Id. at 4 of 16.)

Plaintiff alleges that after he fell in the shower, he was transported to Tuomey Hospital where he was observed for six to eight hours. (Dkt. No. 1 at 7 of 16.) Plaintiff appears to complain about the medical care he received after the fall; he states (verbatim),

> Due to the lacking of receiving little to "no" further medical treatment/exam. All in which limits restricts and disable applicant from doing manual labored work . . .

2

(Dkt. No. 1 at 8 of 16.) Plaintiff alleges that he now suffers from chronic migraine headaches as well as leg weakness, exhaustion, joint pains and arthritis, panic disorder, and depression. (Id. at 8-9.)

Plaintiff also complains that Defendants violated his First Amendment right to free speech "by not allowing [him] to review" his grievance. (Dkt. No. 1 at 4 of 16.) Plaintiff further claims that Defendants violated his Fifth and Fourteenth Amendment rights, as well as the Americans with Disabilities Act. (Dkt. No. 1 at 3, 5.) In the "Relief" section of his Complaint, Plaintiff seeks compensatory and punitive damages as well as declaratory and injunctive relief. (Dkt. No. 1 at 14 of 16.)

## APPLICABLE LAW

### Summary Judgment Motion Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

Defendants seek summary judgment on several grounds. (See generally Dkt. No. 25.) The undersigned will address Plaintiff's claims in turn.

**A. Conditions of Confinement Claim**

As noted above, Plaintiff claims the unsafe condition of the shower caused him to suffer significant injuries when he slipped and fell. To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir.2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. See Strickler, 989 F.2d at 1380-81.

Plaintiff essentially complains that, because the shower did not have a safety mat, Defendants violated his constitutional rights. The undersigned disagrees and recommends granting summary judgment to Defendants on this claim. Defendants filed the Affidavit of Associate Warden Cothran with their Motion for Summary Judgment. (See Dkt. No. 25-3.)

4

Cothran, who is currently the Associate Warden at Turbeville (and was during all relevant times), stated in his Affidavit,

> 2. Currently and at the time of the Plaintiff's alleged fall in the shower, all inmates have/had shower shoes. Every inmate has/had plastic flip flops or brown shower shoes issued to them. I do not know if the Plaintiff was wearing his shoes when he allegedly took a shower which resulted in his alleged fall, but I do know that he would have had access to such shoes to aid in the prevention of any slip and fall.

> 3. Every effort is made to prevent inmates from falling or slipping in showers however it is physically impossible for SCDC to prevent every slip and fall in the showers.

(Cothran Aff. ¶¶ 2-3.)

It is well settled that negligence is not actionable in a § 1983 action. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Whitley v. Albers, 475 U.S. 312, 319 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct. . . . "). Furthermore, courts have routinely held that slip and fall cases do not implicate the Constitution. See Bacon v. Carroll, 232 F. App'x 158, 160 (3d Cir. 2007) (holding a prisoner's assertion that prison officials failed to warn him of a wet floor stated a claim of mere negligence and not a constitutional violation); Reynolds v. Powell, 370 F.3d 1028, 1031–32 (10th Cir. 2004) (holding slippery conditions arising from standing water in a prison shower was not a condition posing a substantial risk of serious harm, even where the inmate was on crutches and had warned prison employees that he was at a heightened risk of falling); Beasley v. Anderson, 67 F. App'x 242 (5th Cir. 2003) (holding a prisoner's claim that he slipped and fell on a slippery shower floor sounded in negligence and was insufficient to allege a constitutional violation); Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir.1996) (holding "an inch or two" of accumulated water in the shower was not "an excessive risk to inmate health or safety"). Instead, slip and fall cases articulate state law tort claims at best. Plaintiff's claims in the present case fail the first prong of the

5

analysis because a slippery floor does not constitute a denial of necessities sufficient to meet the first objective prong of a conditions of confinement claim. A slippery floor also does not amount to punishment in the constitutional sense. Plaintiff therefore cannot satisfy the first prong of the claim.

Furthermore, as indicated in Defendant Cothran's Affidavit, Turbeville officials have made an effort to prevent inmates from slipping and falling in the shower by providing them with plastic flip flops or brown shower shoes. (Cothran Aff. ¶ 2.) While Turbeville officials have not purchased shower mats, as Plaintiff would like, Defendants have not violated Plaintiff's constitutional rights. See Sweat v. Walker, No. 9:08-3095-HFF-BM, 2009 WL 2256475, at *1 (D.S.C. July 27, 2009) (rejecting claim for fall in prison shower where the inmate "maintain[ed] that Defendants knew the shower posed a risk because the shower beside the one he fell in had rubber mats"); see also Davis v. Reilly, 324 F. Supp. 2d 361, 367 (E.D.N.Y. 2004) (holding failure to provide shower mats does not rise to the level of a constitutional violation) (cited in Green v. Rushton, No. 8:05-2251-GRA-BHH, 2006 WL 2564396, at *4 (D.S.C. Sept. 1, 2006)); Williams v. Manigoat, No. 8:08-2084-CMC-BHH, 2008 WL 2952358, at *3 (D.S.C. July 28, 2008) (rejecting a claim that the "floor lacked a mat to prevent slips" on the grounds that "[t]he allegations could most closely be characterized as complaints of negligence . . . ."). The undersigned therefore recommends granting summary judgment to Defendants on Plaintiff's conditions of confinement claim.

## B. Claim Related to Medical Care

Although Plaintiff is not specific in his Complaint, Plaintiff complains about the medical care he received after his fall in the shower. (See Dkt. No. 1 at 8-9 of 16.) Plaintiff alleges that he received "little to 'no'" medical treatment after his fall. (Id. at 8.)

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton

6

infliction of pain' proscribed by the Eighth Amendment." <u>Estelle</u>, 429 U.S. at 104 (internal citations omitted). To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." <u>Johnson v. Quinones</u>, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." <u>Id</u>. It is well-settled that mere negligence does not constitute deliberate indifference. <u>Estelle</u>, 429 U.S. at 105-06; <u>Grayson v. Peed</u>, 195 F.3d 692, 695-96 (4th Cir. 1999); <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

Defendants attached the Affidavit of Dr. Paul Drago, a physician employed with the South Carolina Department of Corrections, to their Motion for Summary Judgment. (Dkt. No. 25-2.) According to Dr. Drago,

> 5. Plaintiff presented to the Turbeville Medical on February 6, 2010 after an alleged slip and fall in the shower. Plaintiff complained of left ankle pain, left hip pain and headaches. Plaintiff was prescribed medication, bed rest and an ACE wrap to the left ankle. X-rays were ordered of the left hip and left ankle. Within one hour of Plaintiff presenting to the Turbeville Medical, he was transported to Tuomey Regional Medical Center by ambulance for precaution. Plaintiff was assessed in the Turbeville Medical prior to being transported and was alert and oriented. <u>See</u> Encounter 91.
>
> 6. Plaintiff's diagnosis at Tuomey Regional Medical Center was a minor head injury. X-rays of the left hip and left ankle were normal. <u>See</u> Encounter 98. Plaintiff did not complain of any pain or problems with his left leg or head again until December of 2010. <u>See</u> Encounter 128.

(Drago Aff. ¶¶ 5-6.) Drago states that Plaintiff presented to medical on December 16, 2010, after an alleged second fall in the shower. (<u>Id</u>. ¶ 7.) According to Dr. Drago, Plaintiff

7

"complained of his left leg 'just giving out,'" so an appointment was made for his left leg issues; Plaintiff was seen by a physician on December 20, 2010. (Id. ¶ 7.)

Dr. Drago states that Plaintiff next presented to medical on April 13, 2011, where Plaintiff informed Drago that he was "completely healed" from his fall in the shower one year prior. (Id. ¶ 8.) Dr. Drago further indicates that Plaintiff was able to fully squat, and the range of motion for Plaintiff's left leg was within normal limits. (Id.) Dr. Drago's Affidavit continues as follows:

> 9. Plaintiff next presented with complaints of numbness in his left leg in July of 2011. An MRI was ordered of the brain to determine if neuropathy could be clinically determined. See Encounter 164.
>
> 10. Plaintiff consulted with a neurologist on August 1, 2011. The neurologist determined Plaintiff had no neurological deficit noted, normal strength, no sensory deficit, normal reflexes, normal gait/station and his balance was excellent. See Encounter 175.
>
> 11. The Plaintiff then underwent an MRI of the brain on August 24, 2011, which was normal. See Encounter 184.

(Id. ¶¶ 9-11.) Dr. Drago states that he saw Plaintiff on August 31, 2011, and discussed the results of the MRI with Plaintiff. (Id. ¶ 13.) Plaintiff "was found with normal balance, no edema, the ability to squat and full range of motion in the extremity." (Id.) Finally, Dr. Drago states that, "[a]s a result of the joint pain, Plaintiff was referred to an orthopedic physician for an outside consultation." (Id. ¶ 14.) The orthopedic consultation "was essentially normal," and Plaintiff "was advised to avoid wet surfaces if possible." (Id.) Dr. Drago attached Plaintiff's medical records to his Affidavit as Exhibit A. (See Drago Aff. Ex. A.)

The undersigned recommends granting summary judgment to Defendants on Plaintiff's claim for constitutionally deficient medical care. As a preliminary matter, Plaintiff's conclusory allegations that his medical care was deficient do not state a claim. See Crawford v. Doe, 805 F.2d 393 (4th Cir. 1986) (unpublished table decision) ("Crawford's

8

vague and conclusory allegations would not entitle him to relief, even under the most liberal construction." (citing Boyce v. Alizaduh, 595 F.2d 948 (4th Cir.1979))); Dorsey v. Middlebrooks, No. 0:10–2262–TLW–PJG, 2010 WL 5644790, at *4 (D.S.C. Oct. 25, 2010), adopted at 2011 WL 247465 (D.S.C. Jan. 26, 2011), ("While Plaintiff may not agree with the extent and nature of the diagnostic testing and treatment he has received, conclusory allegations that he has not received adequate medical care are insufficient to state a plausible claim."); House v. New Castle County, 824 F. Supp. 477, 485-86 (D. Del. 1993) (Plaintiff's conclusory allegations insufficient to maintain claim). Furthermore, Dr. Drago's Affidavit and the attached medical records reveal that Plaintiff received a great deal of medical care related to his fall in the shower. It is unclear exactly what additional medical care Plaintiff believes he should have received, but mere disagreements in the nature and extent of medical care do not amount to constitutional violations. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."); United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011) ("Although an inmate certainly has a right to necessary medical treatment, he does not have a right to demand that the opinion of his pre-imprisonment doctor be permitted to override the reasonable professional judgment of the prison's medical team.").[1]

## C. Other Claims

To the extent Plaintiff seeks to bring a § 1983 claim related to a grievance, that claim fails, as there is no constitutional right to a grievance procedure. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]here is no constitutional right to participate in grievance

---

[1]Moreover, it is well settled that negligence is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Whitley v. Albers, 475 U.S. 312, 319 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct. . . . ").

proceedings."); <u>Keeler v. Pea</u>, 782 F. Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); <u>see also Riccio v. County of Fairfax, Va.</u>, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

Plaintiff also attempts to bring a claim for violation of his Fifth and Fourteenth Amendment rights. (<u>See</u> Dkt. No. 1 at 5 of 16.) The relevant portion of the Complaint, however, is full of legal buzzwords and contains no factual allegations. As such, these claims fail. <u>See Trulock v. Freeh</u>, 275 F.3d 391, 405 n.9 (4th Cir. 2001) ("'The presence [] of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint" do not support the legal conclusion." (quoting <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 577 (4th Cir.2001))).

Finally, Plaintiff's Complaint references the Americans with Disabilities Act ("ADA"). (<u>See</u> Dkt. No. 1 at 3 of 16.) Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA applies to state prison inmates. <u>Pennsylvania Dep't of Corr. v. Yeskey</u>, 524 U.S. 206, 213 (1998). To establish a violation of the ADA, Plaintiff must demonstrate that (1) he has a disability; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination solely on the basis of the disability. <u>Baird ex rel. Baird v. Rose</u>, 192 F.3d 462, 467 (4th Cir. 1999) (citing <u>Doe v. Univ. of Md. Med. Sys. Corp.</u>, 50 F.3d 1261, 1265 (4th Cir. 1995)). Plaintiff failed to allege any of these elements and, as such, he has failed to state a claim pursuant to the ADA.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 25) be GRANTED.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge

January 9, 2013
Charleston, South Carolina


**The plaintiff's attention is directed to the important notice on the next page.**

11

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).